703 So.2d 579 (1997)
Christina N. and Joseph P. WILLIAMS, et al.
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HOSPITALS, et al.
No. 97-CA-0055.
Supreme Court of Louisiana.
December 2, 1997.
Rehearing Denied January 9, 1998.
*580 Charles T. Williams, Jr., New Orleans, Robert W. Stratton, Baton Rouge, Richard P. Ieyoub, Attorney General, John E. Baker, Metairie, for Applicant.
Lawrence J. Smith, Pamels M. West, Robert E. Arceneaux, New Orleans, for Respondent.
KNOLL, Justice.[1]
In this medical malpractice suit, the plaintiffs attack the constitutionality of the $500,000 cap in favor of the State. The trial court determined that the portion of La.R.S. 40:1299.39[2] which imposes a $500,000 statutory medical malpractice cap on damages awarded against a state health care provider contravenes the state constitutional proscription against sovereign immunity, namely, La. Const. Art. XII,§ 10(A) .[3] We reverse the trial court's ruling, finding this constitutional argument misplaced. Since non-governmental tortfeasors are afforded the same substantive defenses as governmental tortfeasors, La.R.S. 40:1299.39 does not contravene the proscription against sovereign immunity in La. Const. Art. X, § 10(A).

FACTS
From 1986-1989, Dr. Walter Prickett treated plaintiffs' minor son for attention-deficit disorder with hyperactivity. Treatment, consisting of prescribing various doses of ritalin, was dispensed at the East Jefferson Mental Health Center (East Jefferson), Dr. Prickett's former employer. The Louisiana Department of Health and Hospitals (the State) operates East Jefferson. On October *581 13, 1989, plaintiffs' son was admitted to F. Edward Hebert Hospital where he was diagnosed with ritalin dependency.
Plaintiffs then filed a medical malpractice complaint in October 1990 pursuant to the Malpractice Liability for State Services Act, La.R.S. 40:1299.39, et seq. A medical review panel determined that the evidence supported a finding that Dr. Prickett, the State, and East Jefferson failed to comply with the appropriate standard of care and that this failure caused plaintiffs' son to suffer substantial damage to his health.
Initially, plaintiffs sued the State, East Jefferson, and Dr. Prickett, alleging that the State and East Jefferson were liable under the doctrine of respondeat superior. Subsequently, the plaintiffs removed East Jefferson as a defendant, dismissed Dr. Prickett without prejudice, and reserved their rights to proceed against the State.
On the final day of trial, June 30, 1994, the plaintiffs hand-delivered a letter and a copy of our decision in Chamberlain v. State Through DOTD, 624 So.2d 874 (La.1993) to the State, advising them that they were challenging the $500,000 statutory cap placed on monetary damages in medical malpractice cases. After conducting a trial on the merits, the trial court found the State liable for plaintiffs' damages and awarded total damages of $2,019,800.86, well in excess of the $500,000 cap imposed by La.R.S. 40:1299.39. The trial court reasoned that La.R.S. 40:1299.39 was rendered unconstitutional by our opinion in Chamberlain wherein we held that the $500,000 limitation on damages set forth in La.R.S. 13:5106(B)(1) contravened the constitutional proscription against sovereign immunity provided in La. Const. Art. XII, § 10(A).
In accordance with La. Const. Art. V, § 5(D)[4] the State directly appealed to this court. Finding that the trial court prematurely declared La.R.S. 40:1299.39 unconstitutional because the plaintiffs failed to properly raise the constitutional issue, we set aside the trial court's ruling and remanded the case to the trial court for proper consideration. Williams v. State, 95-0713 (La.1/26/96), 671 So.2d 899, 902.
On remand, the plaintiffs amended their petition to specifically challenge the constitutionality of La.R.S. 40:1299.39. Plaintiffs alleged that:
LA R.S. 40:1299.39(B), establishing a limitation of liability for the State of Louisiana in medical malpractice cases, has been rendered unconstitutional by the case of Chamberlain v. State, 624 So.2d 874 (1993) and, therefore, [the] statutory cap of $500,000 does not apply.
After hearing further argument from the parties, the trial court again declared the statute unconstitutional "insofar as it limits damages recoverable by a plaintiff injured through malpractice committed by agents of the State of Louisiana." The trial court denied the State's motions for a new trial and clarification of judgment.
The State has again directly appealed to this court, contending: (1) La.R.S. 40:1299.39 is constitutional because it does not contravene the proscription against sovereign immunity; (2) if the statute was unconstitutional, amendments to La. Const. Art. XII, § 10 in 1995 cured the infirmity and are applicable retroactively; and (3) no other avenue of constitutional attack is properly before the court.

DISCUSSION
The jurisprudence is firmly established that we should not address the constitutionality of legislation unless it is essential to decide the case or controversy. Commercial Nat'l Bank in Shreveport v. Scott, 398 So.2d 1127 (La.1981). Likewise, it is axiomatic that before we reach the question of whether La.R.S. 40:1299.39 violates Article XII, § 10(A) of the Louisiana Constitution, we must first inquire into whether the questioned statute calls prohibited sovereign immunity into play. For the following reasons we find that the trial court improperly resolved this case on constitutional grounds.
*582 In order to address this threshold issue, we will begin by referring to Chamberlain v. State Through DOTD, 624 So.2d 874 (La. 1993). Although in Chamberlain we reached the constitutionality issue and found the offending statute violative of the abrogation of sovereign immunity, an outcome that differs from our resolution of the case sub judice, we find that the Chamberlain case presents us with a window to better view the question presently before us. In Chamberlain we noted that:
In prohibiting immunity from liability as well as from suit, the framers [of La. Const. Art. XII, § 10(A)] clearly intended that the state not be afforded substantive defenses, unavailable to private litigants, based simply on its governmental status.
Chamberlain, 624 So.2d at 886.
Based upon this reasoning, we found that La.R.S. 13:5106(B)(1), a statute which limited general damage recovery from the State in all cases, was unconstitutional under La. Const. Art. XII, § 10(A) because no corresponding limitation of liability applied to private defendants. Such is not the case before us.
In Butler v. Flint Goodrich Hosp., 607 So.2d 517 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993), we upheld the constitutionality of the $500,000 cap on medical malpractice judgments available to suits against private defendants through the application of La.R.S. 40:1299.42(B)(1). In particular, we found that La.R.S. 40:1299.42(B)(1) did not contravene the provisions of the Louisiana Constitution and the Federal Constitution. Thus, it is evident that private defendants in the medical malpractice arena are afforded the benefits of a statutory cap on judgments against them.
La.R.S. 40:1299.39, the statute challenged in the present case, imparts to the governmental tortfeasor the same limitation of liability that is provided to non-governmental tortfeasors who commit medical malpractice. Therefore, since the legislature afforded the State a substantive defense, vis-a-vis a statutory limitation of damage, equally available to private citizens, it is clear that the statute under attack does not violate La. Const. Art. XII, § 10's proscription against sovereign immunity. See Levron v. State, 94-2094 (La.App. 4 Cir. 4/24/96), 673 So.2d 279, writs den'd, 96-1684, 96-1723 (La.10/4/96), 679 So.2d 1387, 1391.
This pronouncement fully comports with our earliest rulings on sovereign immunity decided under the 1974 Constitution.[5] In Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La.1978), we held La. R.S. 13:4521, a statute which purported to exempt governmental units from court costs, unconstitutional under La. Const. Art. XII, § 10 because it attempted to relieve the government from an aspect of liability which private litigants did not have at their disposal. Similarly, in Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980), we rejected the view of the appellate court that public bodies should be exempt from the strict liability recognized in La.Civ.Code art. 2317 (West 1971). Since private parties could be held liable on the basis of strict liability, we found that the appellate court's interpretation of La.Civ.Code art. 2317 impermissibly created an exception to liability which was prohibited by the State's waiver of sovereign immunity in La. Const. Art. XII, § 10.
These cases illustrate that we have consistently held that the abrogation of sovereign immunity demands that governments *583 be limited to the substantive defenses that are available to private party defendants similarly situated. Simply stated, the abrogation of sovereign immunity necessitates the application of the law of the land equally to the sovereign and the private litigant. Accordingly, we find plaintiffs' constitutional attack misplaced, as the statute at issue is equally available to the sovereign and the private litigant; therefore, it does not contravene the proscription against sovereign immunity.
We further find that the issue of whether La.R.S. 40:1299.39 violates Article I, § 3 of the Louisiana Constitution[6] is not before us. As we enunciated in Williams, 671 So.2d 899, 901, "the unconstitutionality of the statute must be specially pleaded [in the trial court] and the grounds for the claim particularized." Accord Vallo v. Gayle Oil Co., Inc., 646 So.2d 859 (La.1994); Johnson v. Welsh, 334 So.2d 395 (La.1976). As quoted supra, the Williams' sole particularization was that our decision in Chamberlain rendered La.R.S. 40:1299.39(B) unconstitutional. A review of Chamberlain shows that the sole constitutional issue raised was a violation of La. Const. Art. XII, § 10, prohibiting sovereign immunity. Since the Williams failed to particularize any other constitutional issue, we find that they are precluded from now raising any other constitutional violation.
For the foregoing reasons, the judgment of the trial court which declared La.R.S. 40:1299.39 unconstitutional is reversed and set aside. This matter is remanded to the trial court to render judgment in accordance with our reasoning herein and to allow the parties an opportunity to appeal the damage award to the appellate court should they so choose.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, Justice, dissenting.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Smoked Products v. Savoie's Sausage, 96-1716 (La.6/30/97), 696 So.2d 1373, 1378, reh'g denied. See also, La. C.C. art. 9. When a constitutional provision contains clear, unambiguous language, we must rely on the finished product, which is the expression of the voters who adopted the constitution. See Chamberlain v. State Through DOTD, 624 So.2d 874, 886 (La.1993) (citations omitted). Constitutional provisions which are plain and unambiguous must be given effect. City of New Orleans v. Scramuzza, 507 So.2d 215, 217 (La.1987).
La. Const. Art. XII, § 10(A) provides:
"Section 10. (A). No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."
The clear, unambiguous, straightforward language of La. Const. Art. XII, § 10(A) (hereinafter, Section 10(A)) contains an absolute prohibition against immunity by the state from specific types of suits and liability suits in contract and for injury to person or property. Chamberlain v. State Through DOTD, 624 So.2d 874 (La.1993). Because Section 10(A) sets forth a mandatory prohibition against sovereign immunity in tort and contract suits, it is a self-executing constitutional provision.[1] This court recognized decades ago that in Louisiana, sovereign *584 or governmental immunity was a judicially-created doctrine, which was outmoded and inconsistent with the state's policy of requiring that state agencies either "act responsibly, or be subject to answer in court." See Chamberlain, 624 So.2d at 881, citing Board of Comm'rs of Port of New Orleans v. Splendour Shipping & Enterprises Co., 273 So.2d 19, 24-25 (La.1973).
The statutory ceiling contained in La. R.S. 40:1299.39(F) provides in pertinent part:
"Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars."
A ceiling on non-economic damages partially resurrects sovereign immunity because it declares, in essence, that injury inflicted by the governmental tortfeasor is not legally cognizable beyond the ceiling amount. See Chamberlain, 624 So.2d at 884 (citations omitted). Accordingly, the $500,000.00 statutory ceiling on damages contained in La. R.S. 40:1299.39(F) violates the constitutional proscription against sovereign immunity.
A finding that La. R.S. 40:1299.39(F) is violative of Section 10(A)'s proscription against sovereign immunity is consistent and directly on point with this court's decision in Chamberlain. The majority correctly recognizes that this court's decision in Chamberlain "presents us with a window to better view the question presently before us." In Chamberlain, the trial court initially awarded plaintiffs $2,000,000.00 in general damages, but subsequently reduced the damages to fit within the $500,000.00 cap under La. R.S. 13:5106(B)(1). Following Sibley v. Board of Supervisors of Louisiana State University (Sibley I)[2] and Butler v. Flint Goodrich of Dillard University,[3] the appellate court held that the cap was constitutional and affirmed the trial court. This court granted plaintiffs' writ application and addressed the issue of whether the caps provision of the statute was constitutional. This court held that "the statutory ceiling on general damages imposed by Louisiana Revised Statute 13:5106(B)(1) conflicts with Section 10(A) and is thus unconstitutional." This court reasoned that the ceiling on damages cannot be "construed as anything other than a partial resurrection of sovereign immunity," and that to limit the state's liability to $500,000.00 effectually immunizes the state from liability.
In reaching the conclusion that La. R.S. 49:1299.39 does not violate Section 10(A) in the present case, the majority relies on the following language in the Chamberlain decision:
"In prohibiting immunity from liability as well as from suit, the framers clearly intended that the state not be afforded substantive defenses unavailable to private litigants, based simply on its governmental status." Chamberlain, 624 So.2d at 886, citing Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La.1978) and Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980).
Based upon the above language, the majority in the instant case concludes that because the legislature enacted a ceiling on the liability of private litigants, it may properly enact a ceiling on the liability of the state as well without violating the proscription against sovereign immunity.
The majority's reasoning and reliance on this one-sentence language in Chamberlain is misplaced and narrow, considering the Chamberlain decision in its entirety. In stating the above language, the court in Chamberlain was pointing out the flaws of reading Section 10(A) as simply eliminating the consent to sue requirement. Chamberlain, 624 So.2d at 886. A reading of this language in its proper context reveals that this court was noting the fact that in addition to eliminating the consent to sue requirement, elimination of advantages by the state based simply on its governmental status which are unavailable to private litigants was *585 an additional purpose of Section 10(A). Chamberlain, 624 So.2d at 886. Moreover, the majority's conclusion that the Chamberlain court found La. R.S. 13:5106(B)(1) unconstitutional under Section 10(A) because "no corresponding limitation of liability applied to private defendants" is erroneous and incorrect. Actually, the Chamberlain court found the statute unconstitutional solely because it conflicted with Section 10(A)'s absolute, unequivocal proscription against sovereign immunity. The court stated:
"A ceiling on non-economic damages, like LSA-R.S. 13:5106(B)(1), partially resurrects sovereign immunity because it declares, in essence, that injury inflicted by a governmental tortfeasor is not legally cognizable beyond the ceiling amount. Stated otherwise, when immunity has been abolished, decreasing recovery from full compensation to a maximum ceiling partially resurrects immunity. It follows that LSA-R.S. 13:5106(B)(1)'s ceiling on general damages cannot, despite the legislature's disclaimer to the contrary in LSA-R.S. 13:5106(E)(4), be construed as anything other than a partial resurrection of sovereign immunity. Thus, we conclude that the statutory ceiling on general damages imposed by LSA-R.S. 13:5106(B)(1) conflicts with Section 10(A) and is thus unconstitutional." Chamberlain, 624 So.2d at 884 (footnotes omitted).

Additionally, the majority's reading this court's decisions in Segura, 362 So.2d at 498 and Jones, 388 So.2d at 737 as meaning that the statutes at issue in those cases violated Section 10(A) "because it [the statute] attempted to relieve the government from an aspect of liability which private litigants did not have at their disposal," and since "private parties could not be held liable on the basis of strict liability," is incorrect. In neither Jones nor Segura did this court rely on or even mention the language regarding the availability of substantive defenses to private litigants. In Segura, the court stated that the "narrow question presented by this case is whether the exemption from payment of court costs granted to the State in judicial proceedings by Section 4521 of Title 13 of the Revised Statutes was superseded by Section 10(A) of Article XII of the Constitution of 1974 declaring that the State shall not be `immune from suit and liability in contract.'" Segura, 362 So.2d at 499. In analyzing the case and reaching its conclusion, the court in no way considered whether or not there was such a remedy for private litigantsit was not even a consideration. Also in Jones, this court refused to find a governmental exception to La. C.C. Art. 2317 liability on the basis that it is not the courts' function to create an exception to La. Const. Art. XII, § 10's "unequivocal" waiver of sovereign immunity. Again, no mention or consideration of whether private litigants were afforded that remedy. The court relied merely on the fact that sovereign immunity is unequivocally prohibited by Section 10(A). Had the court considered whether or not such substantive defenses were available to private litigants, such consideration would have been a part of the court's reasoning in Jones and Segura.
The fundamental difference in allowing the legislature to limit the liability for private health-care providers while denying legislative attempts to limit the liability of the state is that only the state's liability is guaranteed by the Louisiana Constitution. Slakter, supra note 46, at 370. As there exists no counterpart to La. Const. Art. XII, § 10(A) for private health-care providers, a constitutional attack on the limitation for private health-care providers must demonstrate a violation of the equal protection, due process or adequate remedy clauses, while a successful attack on the constitutionality of a limitation of the state's liability must merely demonstrate that the limitation violates Louisiana's constitutional proscription of sovereign immunity. See Slakter, supra note 47, at 370. This court has, in the past, upheld the $500,000.00 statutory cap in medical malpractice actions against private health-care providers citing plaintiffs' failure to demonstrate a constitutional violation of equal protection, due process or adequate remedy. See Butler, 607 So.2d at 517.[4]
*586 The majority correctly notes that the issue of whether La. R.S. 40:1299.39 violates equal protection of the laws under Article I, § 3 of the Louisiana Constitution is not before us. See Opinion page 583, n. 6. The equal protection argument is not invoked by either party, and the sole question in this case is whether the proscription against sovereign immunity has been contravened. Because the equal protection issue is not before us, whether or not the state is afforded substantive defenses unavailable to private litigants is inapplicable to this case and inappropriate for discussion because it is, undoubtedly, an equal protection argument. Accordingly, the majority's reliance on this language throughout its decision is improper, as well as its reliance on Butler, 607 So.2d at 517. Butler is irrelevant because in Butler, the $500,000.00 medical malpractice cap which this court upheld pertained to private health-care providers and the constitutional challenges were based on the equal protection and access to court provisions of La. Const. Art. I, § 3 and La. Const. Art. I, § 22not the proscription against sovereign immunity provision of La. Const. Art. XII, § 10(A) at issue in the instant case. The majority in the present case, while declaring that the equal protection argument is not before the court, essentially makes an equal protection analysis and concludes that because the $500,000.00 medical malpractice cap is available to private defendants, the same may be properly available to the state.
I am cognizant of the fact that the legislative goal prompting the enactment of the statutory ceiling was to protect the public fisc. See Chamberlain, 624 So.2d at 878, citing comment, Limiting Strict Liability of Governmental Defendants: The Notice Requirement of the 1885 Legislation, 46 La. L.Rev. 1197 (1986). However, as this court acknowledged in Chamberlain, it is not our role to consider the legislature's policy or wisdom in adopting the statute; our role is to determine only the applicability, legality and constitutionality of the statute. Chamberlain at 879, citing City of New Orleans v. Scramuzza, 507 So.2d 215, 219 (La.1987); Board of Commissioners of Orleans Levee District v. Dept. of Natural Resources, 496 So.2d 281, 298 n. 5 (La.1986).
For the foregoing reasons, I respectfully dissent.
LEMMON, Justice, concurring.
I concur in the judgment. However, I persist in the view that the statutory limitation on general damages in medical malpractice cases violates the constitutionally guaranteed equal protection of the laws by discriminatorily denying full recovery to a few catastrophically injured victims of medical malpractice while allowing full recovery to the many lesser injured victims of the same tort. See Butler v. Flint Goodrich Hosp., 607 So.2d 517 (La.1992)(Lemmon, J., dissenting).
NOTES
[1] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[2] Prior to 1988, the time when the alleged medical malpractice began, La.R.S. 40:1299.39(B) provided, in pertinent part:

Limitation of liability. Notwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, exclusive of future medical care and related benefits valued in excess of such five hundred thousand dollars.
After 1988 La.R.S. 40:1299.39(B) was minimally rewritten with limited grammatical changes and renumbered as La.R.S. 40:1299.39(F).
[3] Prior to 1995, La. Const. Art. XII, § 10(A) read:

Section 10. (A) No Immunity in Contract and Tort.
Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to personal property.
[4] La. Const. Art. V, § 5(D) provides, in pertinent part, that "[i]n addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."
[5] We further note that our determination conforms with the interpretation of sovereign immunity prior to the 1974 constitution. In Lewis v. State, 207 La. 194, 20 So.2d 917 (1945), we stated:

The Legislature, by adoption of Act 273 of 1942, having for its special purpose to permit Ms. Lewis to sue the State and to permit the State to stand in judgment in such a suit, and authorizing the payment of any judgment which might be rendered therein, placed the State in the same situation as would be a private corporation which is made a defendant in a tort suit. The State in such a suit must be held just as responsible as a private corporation for the negligent acts of its agents or employees ... When the Legislature grants authority to sue the State, the rules of law and procedure applicable to suits between individuals on a like or similar cause of action apply to such a suit so far as they are not negatived by the plain terms of the grant.
Lewis, 20 So.2d at 922.
[6] "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
[1] Compare to the permissive, non-self-executing language of Sections 10(B), which allocates the power to consent to suit in matters other than contract and tort to the legislature, and 10(C), which allocates the power to establish procedures for such suits and to provide the method for enforcing such judgments to the legislature. See Chamberlain, 624 So.2d at 882.
[2] (Sibley I), 462 So.2d 149, vacated on reh'g, (Sibley II), 477 So.2d 1094 (La.1985).
[3] 607 So.2d 517 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993).
[4] The court held that the $500,000.00 statutory cap on general damages in a medical malpractice suit against multiple defendants does not violate equal protection provisions of the State or Federal Constitutions.