812 So.2d 894 (2002)
Christine VALLIEN, et al.,
v.
STATE of Louisiana, through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 01-0566-CA.
Court of Appeal of Louisiana, Third Circuit.
March 27, 2002.
Writs Denied June 14, 2002.
*896 Bennett Boyd Anderson, Jr., Michael S. Harper, Anderson & Broussard, Lafayette, LA, Counsel for Plaintiffs/Appellants/Appellees: Christine Vallien, Joy Vallien, Tiffany Vallien, Leonard Vallien, Jr.
Elizabeth B. Hollins, Dept. of Justice, Lake Charles, LA, Counsel for Defendant/Appellant/Appellee: State of Louisiana, through DOTD.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.
PETERS, J.
These wrongful death and survival claims arise out of a single-vehicle accident which occurred in Cameron Parish, Louisiana, on the morning of March 13, 1997. In the accident, Leonard Vallien, Sr., sustained fatal injuries when his truck left the road and collided with a tree in the marsh. *897 Mr. Vallien's wife, Christine, instituted this lawsuit on behalf of herself and her three minor children, Leonard Vallien, Jr., Tiffany Vallien, and Joy Vallien. She named the State of Louisiana, through the Department of Transportation and Development (DOTD), as the only defendant.
A jury trial resulted in a verdict finding Mr. Vallien twenty-five percent at fault in causing the accident and assigning the remaining seventy-five percent to DOTD. The jury awarded Mrs. Vallien and her children a total of $1,215,000.00 in general damages and $545,641.88 in special damages. The apportionment of partial fault to Mr. Vallien had the effect of reducing the total jury verdict to $1,320,481.41. The trial court executed a judgment incorporating the jury's findings, but further reduced the award to $909,231.41 to comport with La.R.S. 13:5106, which establishes a cap on general damages in suits against the state. Both DOTD and Mrs. Vallien have appealed.

DISCUSSION OF THE RECORD
The accident occurred on Louisiana Highway 82 (Hwy. 82) in Grand Chenier, Cameron Parish, Louisiana, while Mr. Vallien and his passenger, Nelson Phillips, were on their way home following a seven-day shift offshore. Mr. Vallien, followed by coworker Renaldo Boutte, was traveling in an easterly direction in his 1991 Mitsubishi truck. While attempting a passing maneuver in the westbound lane of Hwy. 82, Mr. Vallien's truck struck an area of ponded water, causing him to lose control of his truck, slide across the eastbound lane of the highway through the ditch on the south side of the highway, and come to rest under a tree limb in the marsh. The branch of the tree sheared off the top of the truck, piercing the passenger compartment. Mr. Vallien and Mr. Phillips were killed as a result of the impact with the tree.
Both Mrs. Vallien and DOTD filed timely appeals. In its three assignments of error, DOTD asserts (1) that the jury erred in concluding that the roadway and shoulder defects created an unreasonable risk of harm and that it had prior notice of any such defects, (2) that the jury erred in its apportionment of fault, and (3) that the jury erred by awarding excessive damages to each of the children. In her appeal, Mrs. Vallien seeks a declaration that La. R.S. 13:5106, the statute limiting awards of general damages in suits against the state, and La.R.S. 13:5112, the statute limiting prejudgment interest, are unconstitutional on the grounds that they violate the Louisiana Constitution's Equal Protection Clause, Sovereign Immunity Clause, and Access to Courts Clause.

OPINION

DOTD's Assignment of Error Number One
In this assignment of error, DOTD contends that the jury erred in concluding that any roadway and/or shoulder defects created an unreasonable risk of harm and that it had prior notice of any such defects. Specifically, DOTD asserts that (1) no credible evidence existed for finding water pooled in the road at depths greater than one-half inch, (2) its duty to provide safe roads and shoulders did not encompass Mr. Vallien's manner of driving, (3) pooling of water in the roadway was not the cause-in-fact of the accident, and (4) it did not have notice of any defects in the road or shoulder.
Whether the claim against the DOTD is based on a theory of negligence pursuant to La.Civ.Code art. 2315, or a theory of strict liability pursuant to La.Civ.Code art. 2317, the plaintiff must prove that:

*898 (1) the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries.

C[o]rmier v. Comeaux, 98-2378, pp. 5-6 (La.7/7/99); 748 So.2d 1123, 1127; Netecke v. State ex rel. DOTD, 98-1182, 98-1197 (La.10/19/99); 747 So.2d 489.
Ford v. State, Through DOTD, 99-1297, p. 4 (La.App. 3 Cir. 4/12/00), 760 So.2d 478, 484, writ denied, 00-1935 (La.9/27/00), 769 So.2d 1214, writs denied, 00-1864, 00-1938 (La.9/29/00), 770 So.2d 350, 352.
Of the four elements required to be proven, DOTD contests the proof of all but custody on appeal. Thus, we begin our review with the second element, whether Hwy. 82 contained a condition which created an unreasonable risk of harm and was thus defective.
DOTD's duty is to maintain the public roadways in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. La.R.S. 48:21(A); Campbell v. Department of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 901-02; Oster v. Department of Transp. & Dev., 582 So.2d 1285, 1288 (La.1991). DOTD must maintain the shoulders and the area off the shoulders, within its right-of-way, in such a condition that they do not present an unreasonable risk of harm to motorists using the adjacent roadway and to others, such as pedestrians, who are using the area in a reasonably prudent manner. Brown [v. La. Indem. Co., 97-1344 (La.3/4/98) ], 707 So.2d [1240,] 1242.
Netecke v. State, Through DOTD, 98-1182, 98-1197, pp. 7-8 (La.10/19/99), 747 So.2d 489, 494-95.
DOTD's duty applies even to motorists "who are slightly exceeding the speed limit or who are momentarily inattentive." Ledbetter v. State, Through Dep't of Transp. & Dev., 502 So.2d 1383, 1387 (La. 1987).
"Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of the case." Cormier v. Comeaux, 98-2378, pp. 6-7 (La.7/7/99), 748 So.2d 1123, 1127. "[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong'...." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The record supports the jury's finding that the evidence presented satisfied the burden of proof on the second element. Hilda Swire, who has lived in the area for over forty years, testified that the shoulder in the area of the accident is higher than the roadway and traps water on the roadway. Additionally, David Richard, who has traveled Hwy. 82 virtually every day, testified that the shoulders along Hwy. 82 are higher than the roadway. He further testified that he has had trouble for some time driving on sections of the highway because of standing water, particularly near the waste disposal plant, which is located close to the accident site. Paul Preston Boudreaux, the Cameron Parish DOTD maintenance superintendent, also testified that there are areas along Hwy. 82 near the site of the accident where the shoulder is higher than the roadway and that water runs off of the shoulder and back onto the roadway with sufficient rain. Cameron Parish Deputy *899 Sheriff Charles Smith, the lead investigator of the accident, testified that he arrived at the accident scene less than twenty minutes after the accident and noticed standing water in the roadway in the westbound lane of Hwy. 82.
Dr. Olin Dart, a highway design expert and Mrs. Vallien's witness, testified that the slope of the road was such that the shoulder was two to three inches higher than the pavement. This condition, according to Dr. Dart, caused water to "pond" or leave a puddle in the roadway after a significant rainfall because the water could not drain off. Dr. Dart explained that ponded water of one inch or greater can cause hydrodynamic drag, which can result in "a very heavy pull on that side [of the vehicle on which the water has pooled] and that would cause the vehicle to start to go one way and then you'd tend to put it in correction the other way and you could over correct and ... go out of control." Dr. Dart was also of the opinion that DOTD maintenance policies and procedures required repair of such defects. Even Dr. Richard Robertson, an expert in highway design and accident reconstruction who testified on behalf of DOTD, agreed that the high shoulder along the roadway was a defective condition which caused water to stand on the roadway and that this condition was a factor which contributed to Mr. Vallien's death. We find no manifest error in the jury's credibility determinations and its conclusion that the roadway-shoulder variance created an unreasonable risk of harm.
Concerning the third element, or the notice requirement, Mr. Boudreaux, the Cameron Parish maintenance superintendent, and Brandon Jerome Carter, a DOTD maintenance specialist, testified that they were aware of problems along Hwy. 82 with standing water and high shoulders. Mr. Boudreaux testified that the high roadway-shoulder variance had existed since 1986. Furthermore, Harry Caldwell, the District Seven maintenance engineer for DOTD, testified that DOTD's maintenance planning manual provided for reshaping of a shoulder that was preventing water from properly draining and causing water to pond, or stand. According to Mr. Caldwell, this was a relatively cheap item of maintenance without any threshold water depths to determine priority. Also, according to Mr. Carter, the average time to address and fix a noted defect in the road is approximately two to four weeks.
Thus, the record evidence provides a reasonable factual basis for the jury to have concluded that the notice requirement was satisfied. Reviewing the record in its entirety, we find no manifest error in the jury's conclusion that DOTD had actual or constructive notice of the defect in Hwy. 82 and failed to take corrective measures within a reasonable time.
The jury's finding that the defect in Hwy. 82 was a cause-in-fact of Mr. Vallien's death is also supported by the record. Dr. Dart was of the opinion that Mr. Vallien's vehicle experienced hydrodynamic drag due to the ponded water on Hwy. 82. Additionally, John Rigol, an accident reconstruction expert who testified for Mrs. Vallien, was also of the opinion that the water on the roadway was significant enough to cause drag on the left front of Mr. Vallien's vehicle and that the ponded water and resultant drag caused the accident. Also, as previously stated, even DOTD's expert testified that the standing water on the roadway was at least one of the contributing factors to Mr. Vallien's death. We find no manifest error in the jury's determinations regarding causation.

DOTD's Assignment of Error Number Two
The jury apportioned twenty-five percent of the fault in causing the accident *900 to Mr. Vallien and seventy-five percent to DOTD. In its second assignment of error, DOTD asserts that the jury erred in this regard.
[A]n appellate court should only disturb the trier of fact's allocation of fault when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact's apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion.
The appellate court[']s determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). In Watson, we said "various factors may influence the degree of fault assigned," including:
(1) [W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson, 469 So.2d at 974.
Duncan v. Kan. City S. Ry. Co., 00-0066, pp. 10-11 (La.10/30/00), 773 So.2d 670, 680-81 (citations omitted), cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001).
In the instant case, Mr. Vallien was returning home after a seven-day shift offshore. There is evidence from which the jury could have concluded that Mr. Vallien was exceeding the speed limit in attempting the passing maneuver that preceded the accident. However, there is also evidence to support that Mr. Vallien may not have been able to appreciate the danger involved until it was too late, thus supporting that his conduct was inadvertent. Specifically, Dr. Dart testified that if the entire roadway is wet, it may be difficult for a driver to discern whether there is a puddle of accumulated water, particularly if the driver is switching lanes. Additionally, while there is always a risk in traveling at an excessive speed when the roadway is wet, that risk was greatly exacerbated by the ponded water, over which Mr. Vallien had no control.
Rather, the record supports that DOTD should bear the majority of the fault. As set forth above, there is evidence that the ponded water and resultant drag caused the accident. It is clear that DOTD's neglect of the defect was not inadvertent but that DOTD was well aware, and had been for years, of the problem with high shoulders and standing water in the area of the accident. Furthermore, the risk of a vehicle losing control as a result of the defect was great. Moreover, the responsibility for remedying the defect rested solely with DOTDit was clearly in the superior position. Additionally, according to Mr. Caldwell, remedying the defect was a relatively cheap item of maintenance without any threshold water depths to determine priority. Also, Mr. Carter testified that the average time to address and fix a noted defect in the road is approximately only two to four weeks. We find no manifest error in the jury's apportionment of fault.

*901 DOTD's Assignment of Error Number Three

The jury awarded wrongful death damages to Mr. Vallien's minor children in the following amounts: $375,000.00 to Leonard, $337,500.00 to Tiffany, and $300,000.00 to Joy. DOTD contends that these awards are excessive.
In Patrick v. Employers Mutual Casualty Co., 99-94, pp. 17-18 (La.App. 3 Cir. 8/11/99), 745 So.2d 641, 652, writ denied, 99-2661 (La.11/24/99), 750 So.2d 987, we explained:
Damages awarded for wrongful death are general damages since the value of the loss is not subject to a pecuniary calculation. The standard for appellate review of a trial court's general damages award was set forth by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
At the time of Mr. Vallien's death, Joy was fifteen years old, Tiffany was twelve or thirteen years old, and Leonard was seven years old. The evidence reveals that Mr. Vallien had a very loving relationship with his children and was very involved in their lives. It is evident that Mr. Vallien's death has been a great loss to his children. "The threshold determination by either the court of appeal or [the supreme court] is whether the amounts awarded by the trial court constituted an abuse of discretion, in either direction." Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801, pp. 8-9 (La.3/22/96), 670 So.2d 1206, 1210. Under the particular facts of this case, we find no abuse of discretion in the wrongful death damage awards to the children.

Mrs. Vallien's Assignment of Error
In addition to the awards to the children previously mentioned, the jury also awarded Christine Vallien $200,000.00 in general damages. The trial court reduced the entire judgment by twenty-five percent, being Mr. Vallien's percentage of fault, to a total judgment of $1,320,481.41. The trial court then further reduced the general damage awards proportionally such that the total general damage award to all of the plaintiffs totaled $500,000.00, as is required by La.R.S. 13:5106(B). This had the effect of reducing the total judgment to $909,231.41. Mrs. Vallien appeals the trial court's reduction of the total general damage award to the $500,000.00 cap. In her appeal, Mrs. Vallien contends that the trial court erred in failing to declare that the cap on general damages and prejudgment interest provided for in La.R.S. 13:5106(B)(2) and La.R.S. 13:5112(C) is unconstitutional. Specifically, she asserts that the statutes violate La. Const. art. I, § 3, the Equal Protection Clause; La. Const. art. XII, § 10(A), the Waiver of Sovereign Immunity Clause; and La. Const. art. I, § 22, the Access to Courts Clause.
Louisiana Revised Statutes 13:5106(B)(2) provides: "In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits *902 and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars." Additionally, La.R.S. 13:5112(C) provides: "Legal interest on any claim for personal injury or wrongful death shall accrue at six percent per annum from the date service is requested following judicial demand until the judgment thereon is signed by the trial judge in accordance with Code of Civil Procedure Article 1911. Legal interest accruing subsequent to the signing of the judgment shall be at the rate fixed by Civil Code Article 2924."
Louisiana Constitution Article I, Section 3 provides in part that "[n]o person shall be denied the equal protection of the laws.... No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations." Additionally, La. Const. art. I, § 22 provides that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." However, the effect of these provisions in an action against the state must be considered in light of the doctrine of sovereign immunity. Absent a waiver of sovereign immunity, the State of Louisiana is immune from suit. Jefferson Lake Sulphur Co. v. State, 213 La. 1, 34 So.2d 331 (La. 1947).
Prior to November 23, 1995, the state had waived immunity from suit and liability in La. Const. art. XII, § 10, which provided as follows:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
Relying on this constitutional provision, the supreme court, in Chamberlain v. State, Through Department of Transportation & Development, 624 So.2d 874 (La. 1993), declared a prior version of La.R.S. 13:5106(B), which attempted to cap general damage awards against the state at $500,000.00, unconstitutional.
However, La. Const. art. XII, § 10(C) was amended by Acts 1995, No. 1328, § 1, to provide as follows:
Limitations; Procedure; Judgments. Notwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against the state, a state agency, or a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject *903 to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
(Emphasis added.)
The electorate of the state approved the amendment in an election held October 21, 1995, and the amendment became effective November 23, 1995, or before the accident sued upon in this litigation. This amendment had the effect of limiting the waiver of sovereign immunity by authorizing the legislature to set recovery limits. The legislature did so by Acts 1995, No. 828, § 2, effective November 23, 1995, which was made subject to the passage of the amendment to La. Const. art. XII, § 10. The recovery limit was later adjusted to the current amount by Acts 1996, 1st Ex.Sess., No. 63, § 1, effective May 9, 1996.
We are cognizant of the fact that La. R.S. 13:5106(B)(2) creates a disparity in treatment between a nongovernmental tortfeasor and a governmental tortfeasor and further recognize that, in the past, the courts have held that such unequal treatment contravenes the proscription against sovereign immunity. See Williams v. State, Dep't of Health & Hosps., 97-0055 (La.12/2/97), 703 So.2d 579. In Williams, the supreme court examined the constitutionality of the medical malpractice cap provided for in La.R.S. 40:1299.39. Using its holding in Chamberlain, 624 So.2d 874, as a "window to better view the question" before it, the supreme court concluded that La.R.S. 40:1299.39 was not in conflict with the waiver of sovereign immunity provided for in La. Const. art. XII, § 10 because it "imparts to the governmental tortfeasor the same limitation of liability that is provided to non-governmental tortfeasors who commit medical malpractice." Williams, 703 So.2d at 582.
Both Chamberlain and Williams were decided without consideration of the 1995 amendment to La. Const. art. XII, Section 10. Basically, this amendment had the effect of returning to a limited waiver of sovereign immunity rather than the full waiver contemplated in the Constitution as it was presented to the electorate in 1974. Despite the inequity of this disparity and the potential for the legislature to continually lower the cap if it so chooses and to impose other limitations on recovery against the sovereign, we are constrained by the will of the people as expressed in the constitutional amendment as well as by the constitutionally mandated separation of powers between the branches of government to affirm the judgment of the trial court. Louisiana Constitution Article XII, § 10 clearly states that "[n]otwithstanding Paragraph (A) or (B) or any other provision of this constitution, the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." (Emphasis added.) Accordingly, we must give effect to the plain language of the constitution and resultant legislation.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court in all respects. Additionally, we assess fifty percent of the costs of appeal to DOTD and fifty percent of the costs of appeal to Christine Vallien, such costs totaling $2,006.82.[1]
AFFIRMED.
*904 THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, J., concurring in part and dissenting in part.
I concur with the majority except with respect to the constitutionality of La.R.S. 13:5105(B)(2).
Louisiana Constitution Article 12, § 10(C) provides in part that "... the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." Pursuant to this provision, the legislature enacted La.R.S. 13:5106(B)(2) which places a $500,000 limitation on nonpecuniary damages. In my view, both the constitutional and statutory provisions run afoul of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
In Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000), the United States Supreme Court considered whether the recount procedures adopted by the Florida Supreme Court for a presidential election were consistent with nonarbitrary treatment of members of the electorate. In concluding that the recount procedure was violative of the Equal Protection Clause, the United States Supreme Court pointed to "the absence of specific standards to insure its equal protection application." Bush v. Gore, 531 U.S. at 106, 121 S.Ct. 525. Similarly, La. Const. art. 12, § 10(C) lacks the required specificity and specific rules to guide the legislature in formulating "the kinds and amounts of recoverable damages." There is absolutely no guidance whatsoever. The lack of guidance and specificity is inconsistent with the obligation to avoid nonarbitrary and disparate treatment of injured victims. Rather, there should be "specific rules designed to insure uniform treatment." Id. The Louisiana constitutional provision and its concomitant enabling statute, La.R.S. 13:5106(B)(2), lack uniform treatment for seriously injured victims whose damages exceed the $500,000 cap and those victims whose damages fall below the cap and who receive full compensation for their injuries. Additionally, there is no uniform treatment of multiple victims who are limited to the $500,000 recovery and an individual victim whose damages may fall below $500,000 and who recover full compromise. The minimum procedural safeguards which are the essence of the equal protection test announced by Bush v. Gore are simply absent in this case.
For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] We have expressed appellate court costs in a dollar amount in our decree pursuant to La.R.S. 13:5112(A).